DUFFIE *against* HAYES.

THIS was an action of assumpsit, on a charter party not under seal. The cause was tried before Mr. J. *Spencer,* at the *New-York* sittings, in *April,* 1817.

The essential parts of the charter party were, as follows : " This charter party of affreightment, made at the city of *Santo Domingo,* this 30th day of *December,* 1815, between *F. Dumas* and Captain *Asa Winslow,* agents for *Cornelius R. Duffie* (the plaintiff,) merchant in *New-York,* and owner of the schooner *Jane,* on the one part, and *Walter C. Hayes* (the defendant,) of the city of *Baltimore* on the other part, witnesseth, that the said *F. Dumas* and *Asa Winslow,* by these presents, do agree to freight unto the said *Walter C. Hayes,* the hull of the schooner *Jane,* burthen     tons, whereof *Asa Winslow* is master. In consideration whereof, the said *Walter C. Hayes* binds himself to pay forty dollars per thousand feet of mahogany, according to the invoice measurement in *Santo Domingo;* ten dollars per ton of fustic and lignum vitæ. On the said amount to be paid, 225 dollars now, and the rest in *New-York,* by satisfactory endorsed notes at sixty days. It is further agreed, that each party shall pay one half of the expenses of the labourers; and the pilot and grass-ropes shall be on the vessel's account. The provisions for the pilot and labourers on the coast, shall be also on the vessel's account. The schooner *Jane* being ready for sea, will proceed to the coast, and there remain fifteen days to receive her cargo. It being understood that in case of any more detention than fifteen days, it will be on *Walter C. Hayes's* expense, for the wages of the labourers, &c."

After the execution of the charter party, a quantity of mahogany, fustic and log-wood was put on board of the *Jane,* at the city of *Santo Domingo,* by direction of the defendant. The schooner then proceeded to the coast to a place called *Maccarees,* whither the defendant also came, and a further quantity of mahogany was taken on board, and when the de-

Where the whole of a vessel is chartered to take a cargo at certain specified rates, per ton, square foot, &c. if the freighter does not furnish a full cargo, the owner of the vessel is entitled to freight, not only for the cargo actually put on board, but also for what the vessel could have taken, had a full cargo been furnished

fendant left the place, one *Vittoria* acted as his agent, by whose direction the vessel went to another place named *Comayas,* where some more mahogany was put on board by *Vittoria,* but not enough to complete her lading. *Vittoria* declared that he had no more to put on board, and no more being offered, the vessel proceeded to *New-York,* not more than two thirds laden. The defendant had paid for the cargo actually brought, and the plaintiff claimed in this action additional freight for what the vessel could have brought, had she been fully loaded. The plaintiff having proved the amount in which the cargo was deficient, the jury found a verdict in his favour, subject to the opinion of the court, whether, on the facts of the case, and the pleadings, he was entitled to recover, or whether the judgment should be arrested, or a verdict entered for the defendant.

*S. W. Jones,* for the plaintiff, contended, that the entire vessel being let to the defendant, the plaintiff was entitled, by the true construction of the contract, to be paid a full freight, according to the rate stipulated in the charter party. Charter parties, like other mercantile instruments, are to be liberally construed. (*Abbott,* part 3. ch. 1. s. 11.) It is manifest that it was the intention of the parties, that the vessel was to take a full cargo, and that the plaintiff was to be paid for as many tons as she could carry. The captain demanded a full cargo; and after waiting the 15 days stipulated for that purpose, he departed with the consent of the defendant's agent.

As to the ground of arrest for any supposed default in the pleadings, that is cured by the verdict. The action ought to be in the name of the real owner or person beneficially interested, not in that of the agent or attorney. (*Bogart* v. *De Bussy,* 6 *Johns. Rep.* 94. *Gunn* v. *Cantine,* 10 *Johns. Rep.* 37.)

*Sampson,* contra, insisted, 1. That by the terms of the contract, there was no engagement on the part of the defendant to fill the vessel. Her burthen is not specified, and if neither party knew her capacity, how could the defendant stipulate to fill her up? Every thing must be expressed; and

nothing is to be admitted by implication. (2 *Lev.* 124.)

*Abbot*, (part 3. ch. 1. s. 3.) states the ordinary covenants and stipulations in a contract by charter party. He says, " sometimes also the freight is expressed to be a certain sum for every ton, cask, or bale of goods put on board, in which ca:e the merchant usually covenants not to put on board less than a specified number of tons, casks, or bales." It is true, that the construction ought to be liberal ; yet it must not be inconsistent with the plain and obvious meaning of the terms of the contract. (*Abbot*, part 3. ch. 1. s. 18. 1 *Esp. N. P. Cases*, 367. *Cook* v. *Jennings*, 7 *Term Rep.* 381.)

If an entire ship be hired, and the burthen thereof expressed in the charter party, and the merchant covenant to pay a certain sum for every ton, &c. of goods which he shall lade on board, but does not covenant to furnish a complete lading, the owners can only demand freight for the quantity of goods actually shipped. (*Abbot*, part 3. ch. 7. s. 2.) *Molloy* (b. 2. ch. 4. s. 8.) says, that " if a ship be freighted by the ton, and she is fully laden according to the charter party, the freight is to be paid for the whole ; otherwise, but for so many tons as the lading amounted to." Again ; " If a ship be freighted and named to be of such a burden, and being freighted by the ton, shall be found less, there shall no more be paid than only by the ton for all such goods as were laden aboard." (*Roccus, Ingers.* trans. n. 72, 73, 74, 75. *Straccha*, p. 3. *n.* 11, 12. *Malyne*, 100.)

If the plaintiff has any right of action against the defendant, it must be for not filling up the vessel ; not for the freight for goods he never carried. In *Ritchie* v. *Atkinson*, (10 *East*, 295.) where the charter party expressed the ship to be of the burden of 400 tons or thereabout, and was to proceed to *St. Petersburgh*, and there load from the factors of the defendant a *complete* cargo, &c. and deliver the same at *W. & L.* on being paid so much *per ton*, &c. The court of K. B. held, that the delivery of a *complete* cargo was not a condition precedent, but that the plaintiff might recover freight for a short cargo, at the rate per ton stipulated, and that the freighter had his remedy for the imperfect or short delivery.

2. The contract is between *Dumas* and *Winslow* of the one part, and *Hayes* of the other. The action, therefore, should have been brought in the names of the contracting parties. (*Abbot*, part 3. ch. 1. s. 2. 2 *Inst.* 673. 2 *Lev.* 74. 3 *Lev.* 138. 1 *Chitty Pl.* 4.) I consider it as an instrument under seal; but whether sealed or not, the construction is the same. (1 *Term Rep.* 678. 1 *Chitty Pl.* 24. 5 *East,* 148. 5 *Johns. Rep.* 239.)

Again; the master ought to have made a regular protest; or if no proper officer at the place, then at the first place he could. (*Malyne,* 98. *Abbot,* 315. 2 *Dallas,* 196.)

3. The breach set forth as a cause of action is uncertain, as it does not state the sum of money due. (*Comyns Dig. Pl.* (C. 47.) (C. 79.) 3 *Caines,* 73. 9 *Johns. Rep.* 291.) This defect is not aided by the verdict; for want of certainty is not helped by the verdict. (1 *Chitty Pl.* 192. 1 *Sid.* 440.)

*S. Jones,* jun. in reply, said, that a protest by the master was a very proper act on his part; but it was not considered indispensable, or as a necessary prerequisite to an action.

This is not an instrument under seal, for though it is expressed to be signed and sealed by the parties, there is nothing but a flourish of the pen to their names. It is a memorandum of a mercantile contract, and the act of a commercial agent is always regarded as the act of his principal. If the suit had been brought in the name of the agent, there would have been much stronger ground for objection.

The defendant hired the entire vessel; he might use her as he pleased. He might fill her up or not. Still he must be liable for the full freight. The contract is not to pay so much for every thousand feet of mahogany *to be laden on board.* Two hundred and twenty-five dollars were to be paid down, and the residue in *New-York.* This shows clearly that the parties must have had in view a full freight. *Abbot* (part 3. ch. 7. s. 2.) says, " if a certain sum be stipulated for every ton, or other portion of the ship's capacity, for the whole voyage, the payment must be according to the number of tons, &c. which the ship is proved capable of containing, without regard to the quantity actually

put on board by the merchant ;" and he cites *Roccus*(a) (n. 72. 75.) as an authority for that position ; and the case of *Westland* v. *Robinson*, (2 *Vern*. 212.) where a ship hired to go beyond sea to bring home a cargo for which a certain rate *per ton* was to be paid, was forced to return in ballast, the merchant's factor having no goods to put on board, and the court of chancery decreed payment of the freight. In conformity to this principle, the *French Ordinance*, (Liv. 3. tit. 3. art. 2.) directs, that if the ship be freighted by the great, and the merchant does not furnish a full lading, yet the master shall not, without his consent, take in other goods to complete the lading, nor without accounting to him for the freight of such goods. (*Pothier Chart. Part*. n. 20. *Abbot*, part 3. ch. 1. s. 8.)

*Per Curiam.* This was an action of assumpsit on a charter party ; and the plaintiff claims freight for as much mahogany, fustic, and lignum vitæ, as could reasonably be carried in the *hull* of the schooner *Jane ;* and the defendant contends that, by the terms of the contract, he was bound only to pay at the rate of 40 dollars per 1,000 feet, for mahogany, and 10 dollars per ton, for fustic and lignum vitæ *actually laden* on board the vessel : that it was optional with him (the defendant) to put as *much,* or as *little,* on board as he pleased ; and that the amount of freight was to be according to the quantity put on board, and not according to the capacity of the vessel.

(a) *Naulum debetur juxta conventionem, et stallia etiam debentur ; ut si navis duo millium amphorarum capax conducta sit pro scutis mille, clarum est, mille deberi, etiam si navis capax non fuerit tot amphorarum, legem enim conventionibus contrahentes dant, et vectura navis juxta conventionem, quibus conventio facta fuerit, solvenda est.* (n. 72.)

*Locata navi non ad corpus navis, sed ad numerum amphorarum, vel sarcinularum, et promissa vectura pro qualibet sarcinula, pro illis tantum amphoris, vel sarcinulis impositis vectura debetur.* (n. 73.)

*Conducta verò navi certa, et expressa vectura, relata ad ipsam navim, non adjecto numero amphorarum, vecturam integram deberi, neque inspiciendam esse capacitatem navis,—secus est si promissa sit vectura ad rationem scutorum duorum pro qualibet sarcinula, nam pro his tantum sarcinulis, quæ imponerentur, vectura debetur. Idem etiam conducta nave simpliciter, in dubio naulum solvitur pro mercibus, quæ imponerentur tantum.* (n. 75.)

ALBANY,
August, 1818.

PENOYER
v.
HALLETT.

There was, also, a motion in arrest of judgment; but the want of special averments in the declaration, (if any such defect,) is cured by the verdict.

The only real question is upon the legal import of the contract.

The jury allowed the plaintiff's full claim for freight according to the capacity of the hull of the vessel, the defendant having laden her *in part only ;* and we are clearly of opinion, that they adopted the true construction of the contract. The plaintiff is, accordingly, entitled to judgment upon the verdict.

Judgment for the plaintiff.